**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | | |
|---|---|---|
| **PATRICK LIENHARD,** | : | **CIVIL ACTION** |
| | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | **No. 21-3230** |
| | : | |
| **CHC SOLUTIONS, INC.,** | : | |
| | : | |
| *Defendant.* | : | |

_____

**MEMORANDUM OPINION**

**Goldberg, J.**                                                                                     **June 28, 2023**

Plaintiff Patrick Lienhard has sued his former employer, Defendant CHC Solutions, Inc. ("CHC"), for discrimination and retaliation in violation of Title VII and the Family and Medical Leave Act ("FMLA"). Plaintiff contends that he was terminated from his employment based upon both his gender and requests for FMLA leave following the birth of his son. Defendant denies that either gender or FMLA leave played any role in its decision to terminate Plaintiff's employment, and that the company simply eliminated Plaintiff's position.

Defendant now seeks partial summary judgment with respect to Plaintiff's claim for back pay damages. Specifically, Defendant contends the undisputed facts show that, following his separation from employment, Plaintiff failed to make reasonable efforts to find a comparable paying position, thus precluding him from recovering back pay. For the following reasons, I will deny the Motion for Summary Judgment.

**I.      FACTUAL BACKGROUND**

As Defendant's Motion for Summary Judgment pertains only to damages and to Plaintiff's actions following his termination from Defendant's employment, the parties' submitted evidence does not address the underlying allegations that initially gave rise to this matter. For purposes of

comprehensiveness, I will broadly summarize the basic background of the matter by reference to the Complaint. My discussion of facts related to damages will be derived from the evidence submitted by the parties on that issue. Where there is conflicting evidence about a particular fact, Federal Rule of Civil Procedure 56 requires that I view such evidence in the light most favorable to Plaintiff.[1]

### A.  The Complaint's Allegations

In October 2016, Burmans Medical Supplies Inc. ("Burmans") hired Plaintiff as the Director of Competitive Intelligence at an annual salary of $80,000, with an annual bonus of $20,000. In the Spring of 2017, Defendant CHC Solutions—another medical equipment and supplies company—acquired Burmans and retained Plaintiff in its employ. As part of his job duties, Plaintiff sent detailed financials to all upper management on a daily basis, handled reporting for the sales team, and worked with operations and purchasing. During his employment, Plaintiff received good performance reviews but was never paid the promised annual bonuses. (Compl. ¶¶ 3–8.)

In February 2020, Plaintiff informed his supervisor, Garrett Moon, that he and his wife were expecting a baby and that he intended to take twelve weeks of unpaid leave under the FMLA. Plaintiff offered to take his leave on an intermittent basis to reduce the burden of his absence and requested a cost-of-living salary adjustment, as he had never received a raise during his employment with Defendant. Moon indicated that because he had never managed an employee who took the full twelve weeks of FMLA leave, he would need to consult with human resources. Moon also denied Plaintiff's request for a raise but promised that Plaintiff would be eligible for bonuses based on the company's performance. (Id. ¶¶ 9–13.)

---

[1]      References to the parties' pleadings will be made as follows:  Defendant's Statement of Undisputed Facts ("DSUF") and Plaintiffs' Response ("PR").  To the extent a statement is undisputed by the parties, I will cite only to the parties' submissions.  If a statement is disputed and the dispute can be easily resolved by reference to the exhibits, I will cite the supporting exhibits.  If a statement is disputed, but the dispute cannot be resolved by reference to the exhibits, I will note the dispute.  I will not rely on any statement of fact that is unsupported by reference to a specific exhibit.

In the same time period, Plaintiff spoke to Maryn Allen, his assigned human resources representative, to inquire into the process for taking the full twelve weeks of FMLA leave. Allen remarked that the request was "odd," as not many employees could afford such lengthy unpaid leave, and that she could think of only one other person who had done so. After this meeting, Plaintiff believed he may be punished if he took the full twelve weeks. (Id. ¶¶ 14, 16–17.)

Plaintiff had to repeatedly follow up with Moon regarding his FMLA leave request, noting that he needed to know whether he could take intermittent leave so that his spouse could make arrangements with her employer. Weeks later, Moon advised plaintiff that he had yet to make a decision given his concerns about how Plaintiff's job responsibilities would be fulfilled while he was on leave. Moon promised to speak to Cathy Vetica, the head of the human resources department, and to provide Plaintiff with an answer the next day. (Id. ¶¶ 18–21.)

Several days later, Allen met with Plaintiff again and advised him that (a) Defendant would not grant his request to take intermittent FMLA and (b) he would need to take his leave in an uninterrupted twelve-week block. At Defendant's request, Plaintiff completed the required paperwork and trained a colleague to fulfill his job responsibilities in his absence. (Id. ¶¶ 22–23.)

On April 30, 2020, when Plaintiff's son was born, he immediately went out on leave. On July 22, 2020, two days before he was expecting to return to work, Plaintiff received a call from Allen, who advised him that Defendant was terminating his employment. (Id. ¶¶ 24–26.)

Plaintiff filed suit in the Pennsylvania state court. On July 20, 2021, Defendant removed the case to federal court. Plaintiff's Complaint sets forth three causes of action: (1) violation of the FMLA, (2) discrimination under Title VII, and (3) violation of the Pennsylvania Human Relations Act ("PHRA").

**B.   Facts Pertinent to the Motion for Partial Summary Judgment**

Following his separation from Defendant's employment, Plaintiff admits that he did not "search, apply, or interview for any available positions." (DSUF ¶ 5; PR ¶ 5.) Instead, in an effort to obtain new

employment, Plaintiff reached out to his professional contacts.  (Def.'s Ex. A, Dep. of Patrick Lienhard ("Lienhard Dep.") 16:6–18:5.)

In the September to October 2020 timeframe, Plaintiff became aware of an opportunity at Gaboro Medical Supply ("Gaboro") through one of his contacts who was Gaboro's managing partner. (Id. at 16:6–11.)  Plaintiff worked as a consultant with Gaboro off and on until March 2021, helping the company with its accreditation and getting its employee manual up to date.  (Id. at 15:8–18.)  He received a check in the amount of $3,000 as total compensation for the services he performed.  (Id. at 15:19–16:21.)  Plaintiff testified that there was a partnership opportunity at Gaboro that he was hoping to pursue, but he ultimately chose not to after looking at the company's financials.  (Id. at 18:15–25.)

In December 2020, and simultaneous with his work with Gaboro, Plaintiff began performing consulting services for Sleek Consulting, LLC ("Sleek").  (DSUF ¶ 12; PR ¶ 12.)  Plaintiff became aware of this opportunity through his brother, who is employed at Sleek.  (DSUF ¶ 13; PR ¶ 13.)  In 2021, Plaintiff earned approximately $18,079 from the services he performed for Sleek.  (DSUF ¶ 16; PR ¶ 16.)  His combined wage total in 2021 from both Sleek and Gaboro was $21,079.  On August 15, 2022, Plaintiff accepted a full-time position with Sleek.  (DSUF ¶ 20; PR ¶ 20.)

In 2021, Plaintiff worked an average of 9.7 hours per week, but his hours were "highly variable." Sometimes he would work twenty hours in a week, sometimes he would work less all depending on the "client load."  (Def.'s Ex. 7; Lienhard Dep. 11:15–23.)  Defendant's expert, Jeroen Walstra, opined that, based on Plaintiff's education and experience, a reasonable estimate of his earning capacity in 2022 was $86,190.  (Def.'s Ex. D.)  Walstra also remarked that after being separated from his job, Plaintiff had access to a labor market of over 13,000 jobs in the Philadelphia, Camden, and Wilmington area, and that his skills were particularly marketable during the pandemic because he could work remotely.  (Def.'s Ex. F 1–2.)

Plaintiff is currently seeking damages of approximately $140,000 representing his back pay, tax gross up, and prejudgment interest through August 15, 2022.  (DSUF ¶ 20; PR ¶ 20.)

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 states, in pertinent part:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a). "Through summary adjudication, the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." Capitol Presort Servs., LLC v. XL Health Corp., 175 F. Supp. 3d 430, 433 (M.D. Pa. 2016). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable factfinder to return a verdict for the non-moving party. Id.

The initial burden is on the moving party to adduce evidence illustrating a lack of genuine, triable issues. Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005). Once the moving party satisfies its burden, the non-moving party must, in rebuttal, present sufficient evidence of a genuine issue. Santini v. Fuentes, 795 F.3d 410, 416 (3d Cir. 2015). The court must then resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana v. Kmart Corp, 260 F.3d 228, 232 (3d Cir. 2001). Summary judgment is appropriate if the non-moving party provides merely colorable, conclusory or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id. at 252. Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Twp. of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993). Moreover, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory

allegations or suspicions." <u>Gans v. Mundy</u>, 762 F.2d 338, 241 (3d Cir. 1985) (citing <u>Ness v. Marshall</u>, 660 F.2d 517, 519 (3d Cir. 1981)).

## III.   DISCUSSION

Defendant seeks partial summary judgment on its affirmative defense that Plaintiff failed to mitigate his damages.  Defendant posits that because Plaintiff failed to use reasonable diligence to obtain substantially equivalent employment, and instead withdrew completely from the job market, Plaintiff should be foreclosed from seeking back pay damages.

A successful plaintiff on an FMLA cause of action is entitled to back pay, front pay, reinstatement if appropriate, and liquidated damages.  <u>Meigs v. Care Providers Ins. Servs., LLC</u>, No. 21-cv-867,2023 WL 187494, at *1 n.2 (E.D. Pa. Jan. 13, 2023).  Recovery of backpay is subject to a duty to mitigate.  As explained by the United States Supreme Court:

> An unemployed or underemployed claimant . . . is subject to the statutory duty to minimize damages . . . .  This duty, rooted in an ancient principle of law, requires the claimant to use reasonable diligence in finding other suitable employment.  Although the unemployed or underemployed claimant need not go into another line of work, accept a demotion, or take a demeaning position, he forfeits his right to backpay if he refuses a job substantially equivalent to the one he was denied.

<u>Ford Motor Co. v. EEOC</u>, 458 U.S. 219, 231–32 (1982).

"While it is the duty of a discrimination claimant to mitigate her losses, it is the employer who has the burden of proving a failure to mitigate."  <u>Caufield v. Center Area Sch. Dist.</u>, 133 F. App'x 4, 10 (3d Cir. 2005).  "When an employer successfully proves a failure to mitigate, any back-pay award to an aggrieved employee will be cut off or reduced beginning at the time of the employee's failure to mitigate and any front-pay award will be foreclosed."  <u>Id.</u> at *11.  To prove a failure to mitigate, a defendant must prove either (a) that other substantially equivalent positions were available to the plaintiff and he/she failed to use reasonable diligence in attempting to secure those positions, or alternatively (b) that the plaintiff withdrew entirely from the employment market.  <u>Id.</u> at *10–11.

Under the first method of proving failure to mitigate, the defendant must prove the existence of "[s]ubstantially equivalent employment" which is "that employment which affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status" as the position from which the plaintiff was discriminatorily terminated.  Id. at *11 (quoting Sellers v. Delgado Cmty. Coll., 839 F.2d 1132, 1138 (5th Cir. 1988)).  The defendant must also establish the plaintiff's lack of reasonable diligence in seeking such employment.  The reasonableness of a discrimination plaintiff's diligence "should be evaluated in light of the individual characteristics of the claimant and the job market . . . [g]enerally, a plaintiff may satisfy the reasonable diligence requirement by demonstrating a continuing commitment to be a member of the work force and by remaining ready, willing, and available to accept employment."  Booker v. Taylor Milk Co., Inc., 64 F.3d 860, 865 (3d Cir. 1995).  Although a discrimination claimant's efforts need not be successful, he or she must exercise good faith in attempting to secure a position.  Caufield, 133 F. App'x at 12.  Nonetheless, the United States Court of Appeals for Third Circuit has recognized that an employee may, following a reasonable period of unsuccessfully searching for equivalent employment, need to lower his or her sights by seeking less remunerative work.  Briggs. v. Temple Univ., 339 F. Supp. 3d 466, 509 (E.D. Pa. 2018) (citing Tubari Ltd., Inc. v. N.L.R.B., 959 F.2d 451, 456 (3d Cir. 1992)).

Alternatively, "[i]n a case where the plaintiff withdrew from the employment market, the employer need not provide evidence that substantially equivalent employment actually existed."  Briggs, 339 F. Supp. 3d at 507.  The Third Circuit has recognized that "[w]hile the reasonableness of an employee's efforts in seeking interim employment is normally determined by such factors as the economic climate and the employee's skills, qualifications and age . . . if the employee has exercised no diligence whatsoever 'the circumstance of a scarcity of work and the possibility that none would have been found even with the use of diligence is irrelevant.'"  Tubari, 959 F.2d at 454 (quotation omitted).  A withdrawal from the employment market or "[a] willful loss of earnings" has been found where the plaintiff "has failed to stay in the labor market, refused to accept comparable employment, failed to

search diligently for other work, or voluntarily quit alternative employment without cause." Holocheck v. Luzerne Cnty. Head Start, Inc., No. 04-cv-2082, 2007 WL 954308, at *15 (M.D. Pa. Mar. 28, 2007).

For an employer to prove failure to mitigate under this second method, however, it must show that the employee "had withdrawn *completely* from the employment market." Caufield, 133 F. App'x at 11 (emphasis added); see also Ngai v. Urban Outfitters, Inc., No. 19-cv-1480, 2021 WL 1175155, at *20 (E.D. Pa. Mar. 29, 2021) ("The required showing is that plaintiff has withdrawn *entirely* from the employment market, which is more onerous than establishing a plaintiff's job search was not reasonably diligent."). "Where there is evidence that a victim of employment discrimination sought employment, but may not have been diligent in doing so," a plaintiff is not wholly precluded from seeking back pay. Holocheck, 2007 WL 954308, at *17 (citing Booker v. Taylor Milk Co., Inc., 64 F.3d 860, 866 (3d Cir. 1995). In the face of such evidence, the question of whether a plaintiff has met his duty to mitigate damages becomes a factual determination. Lett v. Int'l Assn'n of Sheet Metal, Air, Rail, and Transp., No. 19-cv-3170, 2023 WL 2163827, at *2 (E.D. Pa. Feb. 22, 2023) "In that circumstance, a fact-finder has before it evidence of the efforts at finding substitute employment, and can make an assessment of when it was reasonably likely that the plaintiff could have secured other work as well as the amounts she was reasonably likely to earn in that alternative employment." Holocheck, 2007 WL 954308, at *17.

Here, Defendant contends that Plaintiff effectively withdrew from the employment market. It posits that Plaintiff lost his position in July 2020, admitted under oath that he did not search, apply, or interview for any jobs following his termination, and has not had a formal job interview since his interview with Burmans in 2016. Defendant notes Plaintiff's only work from July 2020 to August 2022 was consulting and part-time employment acquired through personal connections that "in total accounted for a fraction of the salary he made for [Defendant]." (Def.'s Mem. Supp. Summ. J. 4.) Defendant avers that, in August or September 2020, Plaintiff began discussing employment opportunities with a company named Gaboro, with whom he became familiar through one of his

contacts.  Although he performed work for Gaboro from September 7, 2020 through January 13, 2021, he received a total compensation amount of $3,000.  Defendant further notes that, in December 2020, Plaintiff began working at a company called Sleek, with whom he became familiar through his brother, not through independent job search or application.  Although Plaintiff worked for Sleek from December 2020 to mid-August 2022, the position was part-time, Plaintiff averaged only 9.7 hours per week, and he earned a total of $18,079 before finally accepting full-time employment with Sleek in August 2022.

This evidence does not satisfy Defendant's summary judgment burden of establishing that Plaintiff withdrew completely from the job market.  It is undisputed that Plaintiff accepted paid independent consulting work from Gaboro within months after his termination.  Plaintiff testified that, while doing this work, he was pursuing a potential full-time partnership opportunity, which he ultimately abandoned after seeing the company's financial information.  Plaintiff also accepted paid consulting work for Sleek, and, although that work was part time through most of 2021, it ultimately resulted in full-time employment and benefits commensurate with his employment with Defendant.  While Defendant criticizes Plaintiff's efforts as insufficient because he relied on family connections or professional contacts to obtain these positions, Defendant cites to no cases that suggest that "reasonable diligence" is measured only in terms of independent job search efforts, rather than professional networking, which is a readily acceptable means of obtaining employment.

Moreover, I would be remiss to ignore the impact of the global pandemic on the job market at the time.  See, e.g., Lett, 2023 WL 2163827, at *4 (declining to find that the plaintiff withdrew entirely from job market based, in part, on the timing of the COVID-19 pandemic); O'Brien v. Middle East Forum, No. 19-cv-6078, 2021 WL 2186434, at *10 & n.6 (E.D. Pa. May 28, 2021) (considering impact of COVID-19 pandemic on plaintiff's reasonable diligence in obtaining employment); Duvall v. Novant Health Inc., No. 19-cv-624, 2022 WL 3331263, at *13 (W.D.N.C. Aug. 11, 2022) (considering pandemic's impact on defendant employer's claim of failure to mitigate).  Plaintiff was terminated by Defendant in July of 2020, at the height of the pandemic.  With the worldwide shutdown of numerous

places of business, job markets were significantly disrupted, lockdowns were enforced, and travel was limited.  Many companies were laying off their employees and not actively looking for new ones.  In that environment, Plaintiff's decision to accept lower-paying, independent consulting work in the hopes that it would lead to more permanent employment does not constitute complete withdrawal from the job market.[2]

Although Defendant may ultimately be able to convince a factfinder that Plaintiff did not act with reasonable diligence in his job search, Defendant has not pointed to undisputed evidence establishing that Plaintiff withdrew *completely* from the job market or made no search for comparable interim employment.  In the face of the evidence of record, the question of whether Plaintiff has met his duty to mitigate damages is a factual question, and a jury must make an assessment of when, particularly in light of the economic environment at the time, it was reasonably likely that Plaintiff could have secured other comparable work.  Accordingly, I will deny Defendant's Motion for Partial Summary Judgment.

An appropriate Order follows.

---

[2]    Defendant relies upon the report of its expert, Mr. Walstra, who identified jobs and probable salaries that Plaintiff "would qualify for and could apply for."  (Def.'s Ex. D, at 8.)  Notably, however, these jobs were identified during a market survey performed on July 19, 2022 and July 25, 2022, well after the height of the pandemic and during a time that many businesses had returned to in-person work.  Such a report fails to establish, as an undisputed fact, that Plaintiff withdrew completely from the work force.